# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF VIRGINIA

# ALEXANDRIA DIVISION

TEGEST TESFAYE,

    *Plaintiff,*

v.                                 **Civil Action No. 1:26-cv-00309**

BOOZ ALLEN HAMILTON, INC. et al

    *Defendants.*

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT FAIRFAX COUNTY SCHOOL BOARD'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT (Dkt. 58)

Plaintiff, proceeding *pro se*, respectfully submits this comprehensive, legally exhaustive Memorandum of Law in Opposition to Defendant Fairfax County School Board's ("School Board") Motion to Dismiss the First Amended Complaint ("FAC") (Dkt. 58) pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explicitly set forth below, Defendant's Motion must be denied in its entirety.

## I. PRELIMINARY STATEMENT

Defendant School Board seeks the extraordinary and drastic remedy of a sweeping, total dismissal of this action with prejudice. However, Defendant's moving papers rest on a fatal, unsustainable procedural shortcut: they have chosen total, systemic silence regarding the vast majority of the specific, granular, and timely factual claims set forth across Plaintiff's 150-page

First Amended Complaint. In federal civil litigation under Rule 12(b)(6), a moving party bears the absolute burden of addressing and disproving *every single claim* it seeks to eliminate. A defendant cannot obtain an all-or-nothing dismissal by simply pretending a plaintiff's core factual claims do not exist.

By executing this strategic omission, Defendant has procedurally conceded twenty-two (22) distinct, operative mechanisms of a continuous civil rights conspiracy, an institutional tracking matrix, and administrative prior restraints. Under long-standing federal pleading standards, because Defendant raised no legal arguments against these underlying events, including verified electronic email siphoning, a fourteen-day administrative delay that exposes its building safety defense as a bad-faith fabrication, and the overt retaliatory security removal of instructional staff in mid-2024, this Court must accept Plaintiff's accounts of the reported misconduct as completely true and undisputed for the purpose of this motion. Because Defendant has failed to meet its burden of proof under Rule 12(b)(6), the Motion to Dismiss must be denied in its entirety.

## II. STANDARD OF REVIEW

### A. The Rule 12(b)(6) Standard Mandates Absolute Acceptance of Pled Facts

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege enough facts to state a claim for relief that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim possesses facial plausibility when the plaintiff pleads detailed factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Crucially, at this stage, the Court must accept all factual allegations in the complaint as 100% true and draw all reasonable inferences in the light most favorable to the plaintiff. *Id.*; *see also*

*Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Rule 12(b)(6) does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Defendant is procedurally barred from raising premature factual disputes, presenting alternative "neutral" narratives, or arguing the merits of the case early to escape discovery.

**B. Pro Se Pleadings Must Be Liberally Construed**

In the Fourth Circuit, it is an unassailable rule of law that pleadings filed by *pro se* litigants must be held to a less stringent standard than formal pleadings drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Jackson v. Dameron*, 254 F.3d 490 (4th Cir. 2001); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). The Court is mandated to read Plaintiff's FAC liberally, ensuring that potentially meritorious constitutional claims are not discarded due to technical formatting errors or dense structural text.

### III. DEFENDANT'S SWEEPING MOTION LEGALLY CONCEDES THE CORE OPERATIVE FACTS BY OMISSION

Under federal pleading standards, Defendant cannot satisfy its burden under Rule 12(b)(6) by filing a motion that completely avoids the most damning, granular, and timely factual claims of the complaint. By choosing total silence on these twenty-two (22) explicit matters, the Defendant has legally conceded them for the purposes of this motion.

The Court must accept the following core, unaddressed acts as undisputed:

**A. Omissions Conceding the Active 2-Year Statutory Window**

1. **The May 30, 2024, Classroom Security Removal:** Defendant provides zero legal argument or denial regarding the highly specific event where AP Language teacher and

English Department Director Jamie O'Neill was physically escorted out of her classroom by security staff *while actively administering a quarterly reading exam.*

2. **The College Recommendation Trigger:** Defendant is silent on the fact that the targeted security removal of Ms. O'Neill occurred immediately after Plaintiff's youngest daughter formally requested an independent college recommendation letter from her.

3. **Jamie O'Neill's Written Assessment:** Defendant fails to address the explicit email from Ms. O'Neill to Plaintiff declaring her daughter an exceptional "literary scholar" who would "ace the AP Lang exam," which directly exposed the administration's bad-faith grading caps.

4. **The AP History Grade Threat:** Defendant leaves unchallenged the incident where English Administrator Shannon Matheny explicitly stated Plaintiff's daughter would receive a score of "1" on her AP History exam—which was exposed as malicious pretext when the student went on to earn a perfect score of "5" on the official exam.

5. **The January 5, 2024, UVA Evasion Deadline:** Defendant fails to address the tactical move where Plaintiff's daughter chose not to apply to the University of Virginia (UVA) to bypass the long-term localized "lock-in" plan orchestrated by county and state actors, which immediately preceded Plaintiff's private corporate termination from her 15 years career at Booz Allen Hamilton Inc. within two weeks.

6. **The May 1st / May 2nd (2024) Admission/Divorce Paradox:** Defendant offers no legal defense for the precise chronological sequence where Plaintiff's husband filed for divorce less than 24 hours after their youngest daughter successfully evaded the Virginia school lock-in protocol and accepted her enrollment offer at Brown University.

**B. Omissions Conceding Electronic Surveillance and Interception**

1. **The Anne Polino Written Confirmation:** Defendant fails to address the physical email where Lake Braddock Middle School Student Services employee Anne Polino explicitly confirmed that Plaintiff's outbound parental communication was siphoned behind her back to a separate entity, Elementary Principal Renee Miller.

2. **The Network Siphoning Infrastructure:** Defendant fails to address the technical manipulation of the school division's electronic communications setup that allowed a separate middle school facility to siphon messages back to an elementary gatekeeper.

**C. Omissions Conceding Core Academic and Testing Falsification Details**

1. **Pearson Education Report Concealment:** Defendant is silent on the detailed allegation that school administrators deliberately siphoned away and concealed the vendor-certified report from Pearson Education for the Naglieri Nonverbal Ability Test (NNAT).

2. **The Fabricated NNAT Score Insertion:** Defendant fails to challenge the fabrication of an altered, local score report used to replace the official Pearson testing data.

3. **Virginia Department of Education Data Discrepancies:** Defendant fails to answer the structural discrepancies between the raw state-level Standards of Learning (SOL) scores and the altered school metrics provided to Plaintiff.

4. **The Administration of "Fake" College Board Exams:** Defendant ignores the specific technique detailed in the FAC where Plaintiff's children were provided falsified score reports for examinations without being allowed to sit for the actual testing.

5. **The Absolute Suppression of English Faculty Performance Metrics:** Defendant fails to counter the top-down directive strictly prohibiting classroom educators, specifically in English and reading-pyramid courses, from providing Plaintiff with genuine performance metrics regarding her children.

**D. Omissions Conceding Executive and Inter-Municipal Collusion**

1. **The Superintendent Brabrand Summons:** Defendant fails to address the fact that the exact day Plaintiff emailed Superintendent Brabrand outlining the internal structural abuse, he was immediately summoned to a meeting by a member of the Ex-Board of Supervisors for the Braddock District, John Cook.

2. **The Tacit Interception Directive:** Defendant fails to challenge the claim that during this meeting; county actors explicitly instructed or reached a tacit agreement with the Superintendent to entirely ignore and cut off all communication with Plaintiff.

3. **The Public Collusion Photographs:** Defendant ignores the public distribution of promotional photographs labeling that immediate meeting as a "great discussion" to signal institutional containment of Plaintiff's complaints.

4. **The Lorton Flagship Engineering Joint Opening:** Defendant skips over the joint public appearance in October 2024 where the exact corporate leadership operating under Judi Dotson stood side-by-side with County Board Chairman Jeffrey C. McKay, exposing the corporate-municipal link.

**E. Omissions Conceding Heavy-Handed Administrative Restraints**

1. **The Two-Week No-Trespass Letter Delay:** Defendant offers no explanation or defense for the fact that the Board waited a full two weeks to mail the no-trespass letter, conceding that no immediate security threat existed.

2. **The Regional Administrative Ban Resignation:** Defendant fails to address the 2017 directive by Dr. Angela Atwater completely banning Plaintiff from contacting her daughter's school, followed by her abrupt resignation within 48 hours of issuing the ban.

3. **The Weaponization of NDAs:** Defendant fails to challenge the systematic use of non-disclosure agreements (NDAs) by the school division to contain and silence departing staff members regarding this major scandal.

4. **The First-Grade Reading Panic Attacks:** Defendant fails to address the specialized incident where teacher Britney Cummings, acting under Principal Erin Jones's instruction, forced Plaintiff's six-year-old daughter to read aloud while making frightening facial expressions, causing severe panic attacks and a lasting cognitive speech impediment.

5. **Institutional Financial & Reporting Fraud:** Defendant fails to address the detailed claims that the falsification of SOL metrics and Naglieri Gifted Assessments was directly tied to institutional reporting fraud used to secure state and federal funding allocations.

## IV. LEGAL ARGUMENT

### 1. DEFENDANT'S SILENCE REGARDING THE UNDERLYING TESTING, SAFETY, AND BULLYING COMPLAINTS CONSTITUTES A PROCEDURAL CONCESSION OF THE CORE 'PROTECTED SPEECH' ELEMENT

*(Applies directly to Count I: Section 1983 Retaliation, Count II: Section 1985 Civil Rights Conspiracy, and Count III: First Amendment Retaliation / Prior Restraint)*

Defendant School Board erroneously attempts to escape federal scrutiny by arguing that because Plaintiff's children have reached the age of majority, Plaintiff lacks standing to seek redress for injuries suffered by her adult children. This is a deliberate, bad-faith mischaracterization of the FAC designed to mask their total failure to address the core elements of a First Amendment retaliation claim.

To establish a claim for First Amendment retaliation under Section 1983, a plaintiff must allege facts showing that: (1) she engaged in protected expression or speech; (2) the defendant took an adverse action that would chill a person of ordinary firmness from continuing to engage in that speech; and (3) a causal relationship existed between the protected speech and the adverse action. *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005).

Plaintiff is not asserting third-party bystander liability. Under long-standing Supreme Court precedent, a parent possesses an independent, fundamental liberty interest under the Fourteenth Amendment Due Process Clause to direct the education, upbringing, and mental well-being of their minor children. *Meyer v. Nebraska*, 262 U.S. 390 (1923); *Pierce v. Society of Sisters*, 268 U.S. 510 (1925). The FAC explicitly details that Plaintiff herself was the direct target of the defendants' retaliatory animus. The systemic falsification of SOL metrics, the reported safety hazards, the targeted first-grade bullying resulting in a cognitive speech impediment, and the college application blocks detailed in the complaint constitute the exact Protected Speech and reporting activity that triggered Defendant's retaliatory animus. The law is clear: a parent has an absolute First Amendment right to petition the government and file formal complaints regarding the safety, academic integrity, and administration of their children's schools. *See Pickering v.*

*Board of Education*, 391 U.S. 563 (1968). Plaintiff explicitly pled that she engaged in this protected speech.

In direct response to these specific reports, Defendant launched an asymmetrical, targeted campaign of personal retaliation against Plaintiff herself—including siphoning her personal electronic communications, executing unconstitutional prior restraints via a two-week-delayed no-trespass order, and conspiring with external actors to destroy her private corporate career. By remaining completely silent on the underlying testing fraud and safety hazards that Plaintiff reported, Defendant has completely failed to challenge the core 'Protected Speech' element of Plaintiff's retaliation claims. Defendant cannot demand the total dismissal of a First Amendment retaliation lawsuit while simultaneously pretending the very complaints that caused the retaliation do not exist. Because Plaintiff was personally and directly targeted with severe emotional, physical, and financial devastation for filing these complaints, direct parental standing is undeniably established, and Defendant's motion must be denied.

## 2. THE FIRST AMENDED COMPLAINT REINFORCES INDEPENDENT PARENTAL STANDING AND ENTIRELY AVOIDS THIRD-PARTY BYSTANDER LIABILITY

*(Applies directly to Defendant's Standing Challenge under Doc 58, Section IV.B)*

As meticulously detailed across the face of the First Amended Complaint (FAC), Plaintiff does not assert third-party bystander liability, nor does she seek to litigate the federal claims of her adult children. The School Board's contention that Plaintiff lacks standing relies on a bad-faith distortion of the pleading, deliberately ignoring that the FAC is explicitly constructed around a 12-year campaign of asymmetrical, multi-agency retaliation directed squarely at Plaintiff herself.

Under long-standing Supreme Court precedent, a parent possesses an independent, fundamental liberty interest under the Fourteenth Amendment Substantive Due Process Clause to direct the

education, upbringing, and developmental oversight of their minor children free from arbitrary state coercion. See *Meyer v. Nebraska*, 262 U.S. 390 (1923); *Pierce v. Society of Sisters*, 268 U.S. 510 (1925). The FAC explicitly reinforces that the systematic bullying of Plaintiff's minor children, the falsification of Pearson SOL registries, and the weaponized denial of advanced academic placements were executed as the precise operational mechanisms of a broader conspiracy designed to break *Plaintiff's* protected advocacy and conceal institutional corruption. The agonizing reality of witnessing her children being targeted by powerful municipal officials over a span of twelve years inflicted an independent, catastrophic psychological, financial, and physical toll on Plaintiff, forcing her into a state of perpetual crisis to shield her daughters from state-sponsored cruelty. This targeted campaign directly caused Plaintiff's corporate blackballing, the total destruction of her 15-year career as a Technical Project Manager at Booz Allen Hamilton, and the unconstitutional deprivation of her parental tracking and communication forum rights. Plaintiff is exclusively seeking direct statutory and common-law damages for the profound personal and economic injuries intentionally inflicted upon her person, while her adult children explicitly reserve their independent rights to pursue separate legal actions. Independent parental standing is absolute on the face of the FAC, and Defendant's standing challenge must be denied.

## 3. THE SCHOOL BOARD'S "SCHOOL SAFETY" NARRATIVE IS A LITIGATION-DRIVEN FABRICATION COMPLETELY CONTRADICTED BY THE MUNICIPAL PAPER TRAIL AND PROCEDURAL DELAYS

*(Applies directly to Count III: First Amendment Retaliation / Prior Restraint and Count IV: Procedural Due Process / Fourteenth Amendment)*

Defendant School Board attempts to insulate its unconstitutional physical and communication bans by hiding behind a generic, post-hoc pretext of 'school safety and security' under the

balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). This narrative is a complete farce, utterly discredited by the defendants' own parallel administrative and legal actions.

Under the Due Process Clause of the Fourteenth Amendment, when a state entity deprives a citizen of a protected liberty or property interest, such as a parent's fundamental right to access their child's school and educators, it must provide pre-deprivation process, meaning notice and an opportunity to be heard *before* the restriction is enacted, unless an immediate emergency exists. *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972); *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971).

First, the School Board waited an astonishing fourteen (14) days after the alleged incident to issue the physical no-trespass mandate. This extensive administrative delay is fatal to their defense; it conclusively disproves the existence of any immediate building emergency or security risk that could justify bypassing Plaintiff's procedural due process rights. If an active safety threat existed, a public-school division does not wait two weeks to mail a letter. Because no emergency existed, they were legally and constitutionally mandated to provide Plaintiff with a pre-deprivation hearing before stripping away her parental access.

Second, the unconstitutionality of this prior restraint is completely exposed by the municipal paper trail. When Plaintiff retained legal counsel to formally contest the procedural validity of this unreviewable ban, the County's legal representatives issued a formal written response directly to Plaintiff's attorney. Crucially, in that formal municipal correspondence, the government actors completely failed to identify, articulate, or document a single concrete safety threat, security risk, or disruptive act committed by Plaintiff.

The state cannot assert an overriding interest in building security to bypass the Due Process Clause when its own legal counsel's written record concedes the total absence of a threat. *See Mathews*, 424 U.S. at 335. This structural silence confirms that the no-trespass letter was never a neutral safety measure, but an unconstitutional prior restraint and viewpoint-discriminatory tool deployed to hide ongoing student record and testing manipulation.

## 4. THE CONTINUOUS VIOLATION DOCTRINE AND FRAUDULENT CONCEALMENT COMPLETELY CRUSH DEFENDANT'S STATUTE OF LIMITATIONS DEFENSE

*(Applies directly to Count I: Section 1983 Timeline Preservation and Count II: Section 1985 Conspiracy Continuous Violation Framework)*

Defendant's claim that this action is time-barred because the initial physical letters were dated outside the two-year window deliberately mischaracterizes the nature of a continuous civil rights conspiracy under Sections 1983 and 1985. The no-trespass mandate was not an isolated, discrete event; it was the foundational structural baseline of an ongoing, continuous campaign of administrative containment and retaliation.

Under long-standing Fourth Circuit precedent, the Continuous Violation Doctrine applies when a series of separate acts together constitute one unlawful employment or administrative practice. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002); *A Society Without a Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011). In a civil rights conspiracy claim involving an ongoing pattern of systemic retaliation, the statute of limitations does not trigger or begin to run until the *last overt act* in furtherance of the conspiracy occurs. This exact physical lock-out matrix directly overlapped with, and enabled, subsequent hidden actions, including the 2017 total parental communication ban issued by Dr. Angela Atwater, the automated electronic email siphoning system confirmed by Anne Polino, and the May 30, 2024, physical security removal of English Department Director Jamie O'Neill from her classroom mid-exam. Because explicit

overt acts occurred well within the 2-year window (spanning directly into mid-2024), the entire timeline is preserved.

Furthermore, the doctrine of Fraudulent Concealment tolls pauses the statute of limitations as a matter of law. To invoke equitable tolling via fraudulent concealment, a plaintiff must show: **(1)** the party pleading the statute of limitations fraudulently concealed facts forming the basis of the claim, and **(2)** the plaintiff failed to discover those facts despite the exercise of due diligence. *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218 (4th Cir. 1987). While Plaintiff suspected general wrongdoing, the operational nexus, the coordinated electronic network configurations used to siphon her emails and the top-down score manipulation—was actively and covertly hidden from her by the defendants. A defendant cannot spend years deploying covert electronic interventions, administrative prior restraints, and weaponized corporate collusion to actively hide a conspiracy, and then weaponize a statute of limitations defense when those actions finally come to light in 2024.

### 5. THE INTRACORPORATE CONSPIRACY DOCTRINE IS COMPLETELY INAPPLICABLE DUE TO INTERLOCKING COLLUSION WITH SEPARATE ENTITIES AND STATE ACTORS

*(Applies directly to Count II: Section 1985 Civil Rights Conspiracy)*

The School Board's attempt to escape conspiracy liability by invoking the Intracorporate Conspiracy Doctrine is legally untenable. While the baseline doctrine set forth in *Buschi v. Kirven*, 775 F.2d 1240, 1251 (4th Cir. 1985) dictates that employees of a single corporate entity cannot conspire with one another, the Fourth Circuit strictly recognizes an absolute exception to this bar when independent, external third parties join the conspiratorial matrix, or when corporate agents act entirely outside the scope of their employment driven by independent personal animus. See *Greenville Publishing Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974).

The FAC does not merely allege internal discussions among staff inside a single school building. Rather, it meticulously documents an interlocking, cross-entity conspiracy where lower-tier school administrators, specifically Principal Renee Miller and Principal Erin Jones, actively stepped outside their official duties, pooled institutional resources, and coordinated targeted adverse actions with elected School Board members, external Fairfax County Board Supervisors, and state-level political actors. This multi-layered alliance managed a continuous, 12-year campaign of public-private containment, bridging the gap between localized academic grade manipulation, student records concealment, and external professional destruction. Individual administrators leveraged the political endorsements of County Supervisors to shield themselves from administrative accountability, while concurrently utilizing top-down executive directives to enforce unconstitutional prior restraints on speech and block student record transparency. Because independent corporate subdivisions, municipal governing boards, and state actors reached a clear meeting of the minds to weaponize their respective jurisdictional leverage against Plaintiff, the corporate identity shield is completely destroyed, and Section 1985 jurisdiction is firmly established.

## 6. MUNICIPAL LIABILITY IS FIRMLY ESTABLISHED UNDER THE MONELL FINAL POLICYMAKER DOCTRINE VIA EXECUTIVE RATIFICATION
*(Applies directly to Count I: Section 1983 Municipal Liability)*

Defendant School Board's contention that it cannot be held liable under Section 1983 for the rogue actions of individual employees like Principal Renee Miller or Shannon Matheny misstates the governing law of municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). While a municipal entity cannot be held liable under a theory of *respondeat superior* alone, direct liability firmly attaches under Section 1983 when a constitutional violation is executed, directed, or explicitly ratified by a high-level official possessing final, unreviewable

policymaking authority over that specific subject matter. See *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *Riddick v. School Bd. of City of Portsmouth*, 238 F.3d 518, 522 (4th Cir. 2000). Under Virginia law and local administrative guidelines, the Division Superintendent is vested with final, unreviewable executive authority over the administration, network operations, and communication protocols of the school division. The FAC explicitly documents that when Plaintiff escalated the systematic Pearson SOL data manipulation and electronic communication siphoning directly to Superintendent Scott Brabrand, he did not remain neutral or order an internal audit. Instead, he actively coordinated with external municipal supervisors to enforce a total administrative communication blackout and parental exclusion.

By choosing to explicitly ratify the ongoing constitutional violations and weaponize the division's technical and administrative infrastructure to silence a vocal whistleblower, the Superintendent's executive choices became the official, binding policy of the Fairfax County School Board. This top-down executive ratification satisfies the *Monell* final policymaker threshold perfectly at this stage of the litigation, and threshold dismissal must be denied

## 7. THE ROOKER-FELDMAN DOCTRINE HAS NO APPLICATION TO INDEPENDENT FEDERAL CONSPIRACY TORTS

*(Applies directly to Count II: Section 1985 Civil Rights Conspiracy Jurisdictional Rebuttal)*

Defendant relies on a classic legal misdirection, claiming that this Court lacks subject-matter jurisdiction under the *Rooker-Feldman* doctrine because Plaintiff is attempting to relitigate state court family law and divorce rulings in federal court. This argument is a complete distortion of federal jurisdiction.

The *Rooker-Feldman* doctrine is strictly and narrowly confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court

proceedings commenced and inviting district court review and rejection of those judgments."
*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Thana v. Board of License Commissioners for Charles County*, 827 F.3d 314, 319 (4th Cir. 2016). The doctrine does not stop a plaintiff from bringing an independent federal claim in federal court, even if that claim involves facts or transactions discussed in a prior state proceeding. *Id.*

Plaintiff is not asking this Court to undo, reverse, or modify her state divorce decree or any family court order. See *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005). Rather, Plaintiff is seeking damages for an independent federal tort: a multi-defendant civil rights conspiracy under Section 1985 that utilized, leveraged, and manipulated external proceedings as an administrative mechanism of financial, social, and emotional retaliation. Because the School Board was never a party to the state family court proceedings, and the state court had absolutely no jurisdiction to adjudicate a federal Section 1985 civil rights conspiracy, *Rooker-Feldman* has no application here, and jurisdiction is firmly established.

## 8. THE FIRST AMENDED COMPLAINT IS A COMPREHENSIVE CONSPIRACY NARRATIVE, NOT AN IMPERMISSIBLE SHOTGUN PLEADING UNDER RULE 8

*(Applies directly to Defendant's Procedural Challenge Under Rule 8(a))*

Defendant School Board incorrectly labels Plaintiff's First Amended Complaint (FAC) an impermissible "shotgun pleading". Under Fourth Circuit law, a comprehensive, multi-year civil rights complaint satisfies Rule 8 when it details a clear chronological chain linking specific actors to coordinated retaliation. The FAC completely dismantles the shotgun characterization by documenting an un-severable, 12-year narrative of municipal abuse explicitly engineered to conceal standardized testing fraud, enforce academic blockades, and punish a parent

whistleblower, identifying with specificity the identity of the actors, the precise operational timelines, and the discrete tortious actions underlying each claim.

The narrative timeline tracks an explicit, sequential chain of events:

(1) In 2014, Plaintiff discovered systemic Pearson SOL grading fraud and filed formal disclosures with federal oversight bodies, prompting former Superintendent Scott Brabrand to implement a top-down administrative blackout to protect municipal funding metrics. (2) Between 2015 and 2017, school administrators covertly deployed an automated server-level filter to intercept and re-route Plaintiff's private communications, an intrusive network siphoning infrastructure later confirmed in writing by Lake Braddock Student Services employee Anne Polino. (3) To enforce this communication lockout and conceal ongoing student record manipulation, school actors weaponized a multi-year physical no-trespass restriction. (4) Defendant utilized false, extra-legal labels, painting Plaintiff as "disruptive", as a bad-faith, litigation-driven fabrication to strip her of parental forum access without due process. (5) In mid-2024, English Administrator Shannon Matheny and Principal Renee Miller escalated the campaign into active college sabotage, weaponizing bad-faith grading caps, threatening malicious AP scoring drops, and executing the retaliatory, mid-exam security removal of AP Language teacher Jamie O'Neill to disrupt Plaintiff's daughter's academic advancement.(6) Following her daughter's successful evasion of the geographic educational block to accept an offer at Brown University, the conspiracy culminated in immediate financial destruction, leveraging County Board of Supervisors and state actors to trigger the bad-faith termination of Plaintiff's 15-year career as a Technical Project Manager within exactly 14 days. This precise chronological nexus establishes individual liability and temporal proximity, demonstrating that historical events directly enabled and triggered the concrete injuries executed within the active

statutory lookback window. Because this high-density structural detail is legally necessary to plead an interlocking, multi-entity civil rights conspiracy, the FAC provides Defendant unambiguous notice and perfectly satisfies *Twombly* and *Iqbal*. Rule 8 dismissal must be denied.

## 9. THE YOUNGER ABSTENTION DOCTRINE IS COMPLETELY INAPPLICABLE TO INDEPENDENT TORT ACTIONS SEEKING RETALIATORY DAMAGES

*(Applies directly to Defendant's Jurisdictional Challenge Under Doc 58, Section IV.C)*

Defendant erroneously relies on the *Younger v. Harris* abstention doctrine to argue that this Court must refuse to hear Plaintiff's multi-defendant civil rights claims because they reference transactions discussed in external state family law or D.C. Superior Court landlord-tenant proceedings. This argument represents a severe distortion of federal abstention principles. The *Younger* doctrine strictly prevents a federal court from issuing injunctive or declaratory relief aimed at halting, interrupting, or interfering with ongoing state criminal or quasi-criminal enforcement proceedings. Plaintiff is not seeking an order from this Court to enjoin, reverse, or stay any active state court proceeding. Rather, Plaintiff is pursuing independent monetary damages for a completed federal tort: a multi-entity civil rights conspiracy under Section 1985 that actively leveraged, manipulated, and weaponized external legal dockets as a mechanical tool of financial and social retaliation. Because the School Board was never a party to those state proceedings, and because a federal action seeking damages for past conspiratorial retaliation cannot interfere with a state court's administrative functions, *Younger* abstention has zero application to this case.

## 10. THE FALSE CLAIMS ACT EXPANDED STATUTORY TEXT COVERS JOINT, THIRD-PARTY RETALIATION AGAINST WHISTLEBLOWERS EXERTING INFLUENCE OVER FEDERAL FUNDS

*(Applies directly to Count XII: False Claims Act Retaliation Under 31 U.S.C. § 3730(h))*

The Defendant seeks the threshold dismissal of Plaintiff's False Claims Act (FCA) whistleblower retaliation count by citing an obsolete, restrictive standard claiming that a third-party municipality can never face liability unless it serves as the plaintiff's direct, W-2 employer .This position is flatly contradicted by the plain statutory text of the False Claims Act under 31 U.S.C. § 3730(h), which Congress deliberately amended and expanded to cover not just traditional employees, but contractors, agents, and associated workers who are targeted or retaliated against by third-party entities that control, manage, or influence federal funding streams.

The Plaintiff's engineering and analytics projects at Booz Allen Hamilton utilized specialized federal defense allocations that were deeply intertwined with the joint corporate-municipal infrastructure negotiations concurrently managed by County Board of Supervisors and state actors. Because the municipal and school division apparatus occupied a position of immense commercial leverage over the private contractor's regional investments, its political pressure to trigger Plaintiff's sudden career termination falls squarely within the modern statutory definition of joint, cross-entity retaliation under the expanded FCA framework. The School Board cannot leverage its joint-venture partner leverage to force a career termination and then use a narrow definition of W-2 status to dodge federal whistleblower liability. The School Board cannot leverage its joint-venture partner leverage to force a career termination and then use a narrow definition of W-2 status to dodge federal whistleblower liability. The School Board's assertion on page 16 of its brief that characterizing a parent as "unstable" or "disruptive" constitutes a mere non-actionable statement of opinion represents a profound misapplication of federal civil rights jurisprudence. This litigation-driven caricature is completely exposed by the chronological reality of a coordinated, multi-entity conspiracy designed to build a retroactive paper trail. Upon discovering the deep falsification of her medical registries in 2017, Plaintiff uncovered that

administrative actors had actively conspired with external personnel to retroactively manipulate past files, planting false behavioral narratives that reached back to the exact timeline of the original 2015 no-trespass issuance.

This interlocking campaign demonstrates a clear meeting of the minds to effectuate a total institutional cover-up. The defendants covertly altered medical files from routine physical checks, where no behavioral or emotional concerns were ever evaluated, to engineer a post-hoc baseline that would sanitize their unconstitutional physical ban and communication lockout. Under controlling Fourth Circuit standards, a government actor cannot deploy a multi-agency conspiracy to manufacture a defamatory stigma behind closed doors, weaponize that fraudulent baseline to strip a parent of her tangible legal forum rights, and then demand a threshold dismissal by calling the resulting characterization a protected "opinion" .

## 11. DEFENDANT DEMANDS A PREMATURE TRIAL-LEVEL EVIDENTIARY STANDARD TO SURVIVE A NOTICE PLEADING MOTION TO DISMISS

*(Applies directly to Count VII: First Amendment Hostile Work Environment / Retaliatory Employment Deprivation and Count X: Electronic Communications Privacy Act Violation)*

Throughout its moving papers, Defendant attempts to apply an impermissible trial-level evidentiary standard to Plaintiff's claims, asserting a lack of specificity regarding the exact intercepting electronic devices (Count X) or a lack of direct employment status (Count VII). This is a fatal procedural error that ignores Federal Rule of Civil Procedure 8(a).

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Evidentiary detail is reserved for discovery and trial, not the motion to dismiss stage. *Twombly*, 550 U.S. at 555.

For Count X (ECPA), Plaintiff easily satisfies the notice pleading standard by explicitly naming the employee (Anne Polino), the target facility (Lake Braddock Middle School), and the exact mechanism of the intercept (the electronic rerouting of outbound parental emails back to an elementary principal, Renee Miller, which Polino confirmed in writing). This provides the defendants ample notice to formulate an answer.

For Count VII, Defendant relies on a narrow, bad-faith reading restricted strictly to Title VII statutory claims. Under Section 1983 and First Amendment retaliation jurisprudence, a state actor can be held liable if they intentionally pool resources with or exert third-party pressure on a private entity to damage a whistleblower's career. *See e.g., Blankenship v. Manchin*, 471 F.3d 523, 528 (4th Cir. 2006). A state defendant does not need to be the direct employer to be held liable under Section 1983 for causing a retaliatory adverse employment action via joint, conspiratorial third-party pressure.

## 12. DEFENDANT'S SWEEPING MOTION TO DISMISS VIOLATES THE RULE 12(b)(6) BURDEN OF PROOF THRESHOLD BY FAILING TO ADDRESS CORE CLAIMS

*(Applies to the Motion to Dismiss Checklist Entirety)*

Under Rule 12(b)(6), the moving party bears the absolute procedural burden of demonstrating that the plaintiff's complaint fails to state a claim upon which relief can be granted. *See e.g., Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993). A defendant cannot satisfy this burden by filing a selective motion that completely avoids the most damning, granular, and timely factual claims of the complaint. Because Defendant has completely ignored twenty-two (22) core, operative factual allegations, including the specific mechanics of the electronic email rerouting confirmed by Anne Polino, the two-week delay in issuing the restrictive letters, the targeted mid-exam security removal of teacher Jamie O'Neill in

mid-2024, and the institutional reporting fraud, they have legally failed to meet their burden of proof. A defendant cannot obtain a total dismissal of a 150-page complaint by simply pretending its core sections do not exist. Therefore, their sweeping demand for a blanket dismissal must be denied.

## 13. THE SCHOOL BOARD'S SOVEREIGN IMMUNITY DEFENSE FAILS TO BLOCK LIABILITY FOR MALICIOUS, INTENTIONAL, AND EXTRA-LEGAL CONDUCT EXECUTED BY INDIVIDUAL ACTORS

*(Applies directly to State-Law Tort Claims: Statutory Business Conspiracy, Intentional Infliction of Emotional Distress, and Tortious Interference)*

Defendant School Board asserts a sweeping, across-the-board entitlement to absolute sovereign immunity under Virginia common law, claiming it is entirely insulated from liability for any state-law tort counts. This expansive defense completely misapplies the clear legal boundaries established by the Supreme Court of Virginia. While local school boards enjoy baseline immunity for routine administrative or governmental operations, that common-law shield completely vanishes when institutional agents act with actual malice, commit gross negligence, or execute intentional torts that fall entirely outside the legitimate scope of their public employment duties. See *Fox v. Deese*, 234 Va. 412 (1987); *Elder v. Holland*, 208 Va. 15 (1967).

The factual allegations within the First Amended Complaint (FAC) do not challenge routine administrative choices, general classroom management, or content-neutral localized safety rules. Instead, the FAC meticulously documents a highly targeted, un-delegated, and malicious campaign of electronic communication interception, standardized testing data falsification, and corporate-municipal career sabotage specifically engineered to punish a parent for her protected whistleblowing Under long-standing Virginia jurisprudence, public officials and municipal actors who engage in intentional, extra-judicial concealment schemes to protect fraudulent administrative metrics or execute personal vendettas completely forfeit their official corporate

identity shields. Because these retaliatory adverse actions were driven by an independent, malicious personal stake that stepped completely outside the boundaries of lawful public service, the individual actors face standard common-law tort liability, and the School Board remains answerable for the direct custodial, emotional, and economic devastation inflicted upon Plaintiff. Because the FAC explicitly documents that final municipal policymakers authorized, executed, and ratified this malice, intentional campaign of data fraud and communication lockouts, the entity-level protections set forth in *Brooks-Buck v. Wahlstrom* (2025) cannot apply to shield the School Board from direct liability for its official corporate policy choices. Consequently, Defendant's threshold demand for a sovereign immunity dismissal must be denied.

## V. CONCLUSION

For the foregoing reasons, Defendant Fairfax County School Board has completely failed to meet its burden of proving that Plaintiff's First Amended Complaint fails as a matter of law. Defendant's Motion to Dismiss must be **DENIED** in its entirety, and this case must be permitted to proceed to the discovery phase.

Dated: July 30, 2026

Respectfully submitted,

Tegest Tesfaye, Plaintiff, *pro se*

**Certificate of Service**

I hereby certify that on July 30, 2026, a true copy of the foregoing Memorandum in Opposition

was filed at the Clerk office and served electronically via the Court's CM/ECF system, which

will automatically send a notification of such filing to all counsel of record.

Dated: July 30, 2026
Respectfully submitted,

Tegest Tesfaye, Pro Se Plaintiff
7047 Solomon Seal Ct, Springfield, VA 22152
Tel: 703.989.5318 | Email: tegestmelu@yahoo.com

**Ghostwriting Certification Pursuant to Local Rule 83.1(N)**

I, Tegest Tesfaye, proceeding pro se in the above-captioned matter, do hereby certify in writing

and under penalty of perjury that the foregoing Memorandum in Opposition has not been

prepared by, or with the aid of, an attorney.

Executed on this 30th day of July, 2026.

Tegest Tesfaye, Pro Se Plaintiff